# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JANE DOE,

    Plaintiff,

    v.

WAYNE COUNTY SCHOOL DISTRICT,
and HAROLD HILL, in his
individual capacity,

    Defendants.

2:24-cv-5

## ORDER

Before the Court is Defendant Wayne County School District's motion to dismiss. Dkt. No. 46. The motion has been thoroughly briefed and is ripe for review. Dkt. Nos. 46, 49, 54. For the reasons stated below, Defendant's motion is **DENIED**.

### BACKGROUND[1]

This case arises out of a series of events at Wayne County High School. Dkt. No. 40. From August 2021 until May 2022, Plaintiff was an eleventh-grade student at Wayne County High School. Dkt. No. 40 ¶ 14. At the time, Plaintiff was a minor.[2] Id.

---

[1] At this stage, the Court must "accept all factual allegations in a complaint as true[,] and take them in the light most favorable to [the] plaintiff[.]" Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016).

[2] In September 2022, Plaintiff turned eighteen years old. Dkt. No. 40 ¶ 15.

In September 2021, Defendant Harold Hill was hired by Defendant Wayne County School District as the Army JROTC instructor at Wayne County High School. Id. ¶ 16.

On October 19, 2021, during Plaintiff's JROTC class, she went to return her drill rifle to the school storage trailer. Id. ¶ 17. According to the amended complaint, Defendant Hill followed her into the trailer and "pushed Plaintiff to the ground, held her down, and touched Plaintiff's genitals and other areas of her body without her consent." Id. ¶¶ 18-19. Plaintiff tried to escape but was unsuccessful because "Defendant Hill wrapped his legs around Plaintiff and asked her if she felt the same way about him as he did about her." Id. ¶ 20. Plaintiff responded "no." Id. ¶ 21. Defendant Hill then released her, and Plaintiff fled the trailer. Id.

After leaving the trailer, Plaintiff immediately tried to notify a school administrator, specifically Vice Principal Brandon Short. Id. ¶¶ 22, 117. Plaintiff waited about forty minutes to speak with Mr. Short but "he refused to speak with her." Id. ¶ 23. Because Plaintiff was unable to speak to Mr. Short, she left school and called her father to tell him what happened. Id. Plaintiff's father, Mr. Doe, then called her mother, Mrs. Doe, a teacher at Wayne County High School, and the Jesup Police Department. Id. ¶ 24. That same day, Plaintiff returned to school accompanied by her father. Id. ¶ 25. While there, she was examined by the school

2

nurse and interviewed by Vice Principal Patrick Edwards, Vice Principal Short, and Officer Ryan Vickers from the Jesup Police Department. Id. ¶¶ 26, 28.

The next day, October 20, 2021, Plaintiff was interviewed by Detective Chris Hamilton from the Jesup Police Department at Safe Harbor Children's Advocacy Center. Id. ¶ 29. Detective Hamilton informed Plaintiff and her parents that the Jesup Police Department would issue a warrant for Defendant Hill's arrest.[3] Id. ¶ 30.

On October 21, 2021, Principal McDaniel met with Mr. and Mrs. Doe to discuss a plan and protective measures for Plaintiff's return to school. Id. ¶ 31. Plaintiff told the school that she was requesting protective measures upon her return "because she feared retaliation and abuse from students and teachers who may not have the complete story of the assault and blamed Plaintiff for [Defendant] Hill's action." Id. ¶ 33. At this meeting, Principal McDaniel and Plaintiff's parents agreed that Plaintiff would attend school remotely for two weeks and when she returned on November 2, 2021, Plaintiff would "(i) park in the teacher's parking lot, (ii) be escorted to classes, and (iii) be checked on by a school administrator and/or employee." Id. ¶ 32.

On November 2, 2021, Plaintiff returned to school "relying upon the plan and supportive measures" that had been discussed.

---

[3] Following the incident with Doe, Defendant Hill was allowed to resign. Dkt. No. 40 ¶ 7.

Id. ¶ 34. Upon her arrival, no one escorted Plaintiff to her first
class, which was JROTC, and no one checked on her. Id. ¶ 35. That
day, Plaintiff had a panic attack and left school. Id. ¶ 39. Mrs.
Doe contacted the school to inquire about the failure to provide
the agreed upon protective measures, namely a class escort and
administrator/employee check-in. Id. ¶ 40. In response, the school
stated that it "did not expect Plaintiff to be back this soon."
Id. Mr. and Mrs. Doe requested that Plaintiff be able to attend
her JRTOC class remotely and again asked that Plaintiff be escorted
to her other classes as agreed previously. Id. ¶ 41. Still, when
Plaintiff arrived at school the next day, no one escorted her to
class nor did anyone from the school check on her. Id. ¶ 43.
Plaintiff informed the school that her return plan was not being
followed. Id.

On November 8, 2021, Mrs. Doe emailed Vice Principal Short to
inform him that Plaintiff was being bullied by her JROTC classmates
about the incident. Id. ¶ 44. Mrs. Doe stated that Plaintiff's
classmates were blaming her for what happened and made comments
such as "(a) [i]t was Plaintiff's fault that the sexual assault
occurred; (b) Plaintiff brought the sexual assault on herself; (c)
Plaintiff was trying to use sex to get ahead in class; and (d)
Plaintiff deserved what happened to her." Id. ¶ 45. The amended
complaint alleges that Plaintiff and her parents reported this

abuse to school officials but their "requests for help went unanswered." Id. ¶ 48.

In January 2022, Plaintiff returned to school after the holiday break "in an attempt to get back to her normal life." Id. ¶ 50. On January 13, 2022, Wayne County High School was put on a full-scale lockdown while multiple agencies conducted a search of the school and vehicles. Id. ¶ 51. In "response to and in retaliation for Plaintiff reporting [the] sexual assault," Plaintiff's vehicle was searched, and damaged, by Detective Hamilton and Mr. Short. Id. ¶¶ 52, 55. Because "Mr. Short was the lead investigator on Plaintiff's sexual assault case," Mr. Doe repeatedly asked for another school official to carry out the search of Plaintiff's car. Id. ¶¶ 53-54. Vice Principal Short refused to allow another official to do the search and Mr. Doe was threatened with arrest if he continued to complain. Id. ¶ 54. No contraband was found in Plaintiff's car. Id. ¶ 55.

On April 19, 2022, Plaintiff's new JROTC instructor, Ted Marcus, led a class discussion about why women are raped more than men. Id. ¶ 59. Plaintiff alleges that in "comments [that] were directed towards her," Mr. Marcus stated that "'women get raped more often than men because they do not wear enough clothes.'" Id. ¶¶ 60-61. When Plaintiff challenged this statement, Mr. Marcus "refused to retract" it. Id. ¶ 61. Plaintiff and her parents informed Principal McDaniel about the incident, but the principal

did not respond. Id. ¶ 62. On April 22, 2022, Mr. Doe and Principal McDaniel had a meeting to discuss the incident from JROTC class.[4] Id. ¶ 64. Principal McDaniel said that he would "look into it" but he "did not do anything to address the issue." Id. ¶¶ 64, 66.

Due to the "severity and frequency" of the bullying and harassment, Plaintiff was "unable to focus on learning," so she returned to taking classes at home. Id. ¶¶ 47-49. Plaintiff had never failed a class before and primarily earned As and Bs. Id. ¶ 58. Despite this, during the 2021-2022 academic year, Plaintiff failed her literature and French classes. Id. Plaintiff also quit the JROTC program, in turn, "abandon[ing] her lifelong dream" of attending West Point. Id. Furthermore, Plaintiff "became distant, fearful of crowds and walking alone, reluctant to go to school and would miss class, and cried at night." Id. ¶ 49.

Plaintiff filed suit against Defendant Wayne County School District and Defendant Harold Hill asserting claims for the violation of Title IX (Count I), retaliation in violation of Title IX (Count II), violation of 42 U.S.C. § 1983 (Count III and IV), negligence (Count V), battery (Count VI), false imprisonment (Count VII), intentional infliction of emotional distress (Count VIII), and attorney's fees (Count IX). Dkt. No. 40. Defendant Wayne

---

[4] The amended complaint alleges that before this meeting, Mr. Doe had tried to meet with Principal McDaniel about this incident two times. Id. ¶ 63. However, each time, Mr. Doe was told the principal was busy. Id.

County School District moves to dismiss, in full, the claims against it.[5] Dkt. No. 46.

## LEGAL AUTHORITY

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray

---

[5] Defendant Wayne County School District is named in Counts I, II, III, and IX. The remaining claims are asserted against only Defendant Hill and are not at issue here. Dkt. Nos. 1, 46.

v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016).
The Court should not accept allegations as true if they merely
recite the elements of the claim and declare that they are met;
legal conclusions are not entitled to a presumption of truth.
Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential
allegations respecting all the material elements necessary to
sustain a recovery under some viable legal theory." Fin. Sec.
Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th
Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for
Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if
"the well-pleaded facts do not permit the court to infer more than
the mere possibility of misconduct, the complaint has alleged-but
it has not 'show[n]'—'that the pleader is entitled to relief.'"
Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are
to be considered true at the motion to dismiss stage, the same
does not apply to legal conclusions set forth in the complaint.
Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009)
(citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." Iqbal, 556 U.S. at 678. The Court
need not "accept as true a legal conclusion couched as a factual
allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain,

478 U.S. 265, 286 (1986)). Furthermore, the Court "is not required to credit conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." Warren Tech., Inc. v. UL LLC, 962 F.3d 1324, 1328 (11th Cir. 2020) (citation and quotations omitted).

**DISCUSSION**

## I.   Violation of Title IX

Subject to a few exceptions that are not at issue in this case, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The United States Supreme Court has "determined that sexual harassment is discrimination in the school context under Title IX." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999) (citation and quotations omitted). This includes "student-on-student sexual harassment, if sufficiently severe," id., as well as "a teacher's sexual harassment of a student," Gebser v. Lago Vista Independent School District, 524 U.S. 274, 281 (1998). Although similar to the teacher-on-student claims, student-on-student harassment claims are governed by "a more rigorous standard." Sauls v. Pierce Cnty. Sch. Dist., 399 F.3d 1279, 1284 (11th Cir. 2005).

9

**A. Teacher-on-Student Claim**

The Eleventh Circuit has repeatedly held that the standard set forth in Gebser governs Title IX teacher-on-student sexual harassment claims. Doe v. Sch. Bd. of Broward Cnty., Fla., 604 F.3d 1248, 1254 (11th Cir. 2010); Doe II v. Savannah-Chatham Cnty. Pub. Sch. Sys., No. 21-13023, 2022 WL 3041276, at *3 (11th Cir. Aug. 2, 2022). Accordingly, in addition to showing that the school is federally funded and thereby subject to Title IX, Plaintiff must plead three other elements:

> [f]irst, the plaintiff must be able to identify an "appropriate person" under Title IX, i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment. Second, the substance of that actual notice must be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment. And finally, the official with such notice must exhibit deliberate indifference to the harassment.

Broward, 604 F.3d at 1254; see also Gebser, 524 U.S. at 290 (stating that an appropriate person must have "actual knowledge of discrimination in the recipient's programs and fails adequately to respond").

**i. Element One: Federally Funded**

There is no dispute that Defendant is a public high school that receives federal funds and is therefore subject to Title IX. Dkt. No. 40 ¶ 3. Thus, the Court accepts as true that Defendant is an educational institution subject to Title IX.

### ii.  Element Two: Appropriate Person

An "appropriate person" is "an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser, 524 U.S. at 290. This official must be "high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." Broward, 604 F.3d at 1255 (citation and quotation omitted). The Eleventh Circuit has concluded that a school principal, "as the highest-ranking school official on site," constitutes an appropriate person for Title IX purposes. Id. (collecting cases of other circuits holding the same). An assistant principal can also be an "appropriate person" because, like a principal, they "have the authority to discipline students for sexual harassment." Hill v. Cundiff, 797 F.3d 948, 971 (11th Cir. 2015).

Plaintiff alleges throughout her amended complaint that Vice Principal Short and Principal McDaniel were aware of the sexual harassment inflicted by Defendant Hill. See generally Dkt. No. 40. Indeed, Plaintiff alleges that she tried to notify Mr. Short "[i]mmediately after the incident." Id. ¶ 22. Though Mr. Short would not meet with Plaintiff initially, "later that day" when her parents arrived at the school, "Plaintiff was interviewed by Vice Principal Patrick Edwards and Mr. Short," as well as an officer from the Jesup Police Department. Id. ¶ 28. Two days after the

11

incident, Plaintiff's parents met with Principal McDaniel to
"discuss supportive measures and a plan" for Plaintiff's return to
school. Id. ¶ 31. Accepting as true that Plaintiff informed her
school principal and two vice principals of the assault, Plaintiff
has adequately alleged that she informed an appropriate person of
the incident.

**iii. Element Three: Actual Knowledge**

An "appropriate person," as discussed supra, must have
"actual knowledge of discrimination in the recipient's programs."
Gebser, 524 U.S. at 290. Although what constitutes "actual notice"
is a stringent standard, "no circuit has interpreted Gebser's
actual notice requirement so as to require notice of the prior
harassment of the Title IX plaintiff *herself*." Broward, 604 F.3d
at 1257 (collecting cases) (emphasis in original).

Defendant argues that Plaintiff does not allege that the
School District had actual knowledge of any harassment by Defendant
Hill before October 2021, so the District was not on "alert" for
such a possibility. Dkt. No. 46 at 7. Furthermore, the School
District contends that Plaintiff fails to allege she suffered any
additional harassment by Defendant Hill because Hill had resigned
by the time Plaintiff returned to school. Id. at 8. In response,
Plaintiff argues that "[i]t is what happened next that Plaintiff
raises in her suit." Dkt. No. 49 at 12 n.1. In other words,
Plaintiff seeks recovery for the harms that occurred over "the

12

next several months" after the October 2021 assault, not the assault itself. Id.

When accepting the facts in the amended complaint as true, as required at this stage, the Court concludes that Plaintiff has sufficiently plead the actual knowledge element of her claim. Plaintiff points to several facts that demonstrate Defendant had actual knowledge of harassment. For instance, Vice Principal Edwards, Vice Principal Short, and the Jesup Police Department interviewed Plaintiff shortly after the incident, so "appropriate" school officials were aware of the assault. Dkt. No. 40 ¶¶ 28, 117. Furthermore, on October 21, 2021, just two days after the alleged assault, Plaintiff's parents met with Principal McDaniel to request protective measures for Plaintiff when she returned to school. Id. ¶¶ 32-33. Plaintiff also alleges that she made the school aware of the reasons she requested additional protective measures, namely that she feared retaliation and abuse from students and teachers. Id. These facts, accepted as true, sufficiently show that the School District had actual knowledge of both the assault that led to subsequent harassment and Plaintiff's concern that she would suffer further harassment from teachers and peers.

The School District emphasizes that Defendant Hill was no longer employed by the school and, thus, could not harass Plaintiff further and that there was no notice of harassment by Hill prior

13

to the assault. Dkt. No. 46 at 8. To be sure, if Plaintiff roots her claim for relief in the assault itself, then she has failed to sufficiently plead actual knowledge on the part of the School District. Eleventh Circuit case law supports the notion that recovery for a sexual assault itself often requires that the appropriate person had actual notice of prior sexual harassment by the perpetrator. See, e.g., J.F.K. v. Troup Cnty. Sch. Dist., 678 F.3d 1254, 1260 (11th Cir. 2012) (discussing Broward, 604 F.3d at 1250–53, where the court held that two prior complaints about the teacher's actions, alleging, *inter alia*, that he blackmailed two female students into sexual intercourse with him "provided actual notice to the Principal of a pattern of sexual harassment"); Hill, 797 F.3d at 971 (stating that school administrators knew "weeks before the rape that CJC had been propositioning girls to have sex in bathrooms" and learned "days before the rape" that "CJC had allegedly inappropriately touched a female student"). However, here, the Court is not tasked with answering whether the School District had adequate notice *prior* to the assault. Plaintiff maintains that the allegations in her amended complaint stem from the events *after* the assault and that "Defendant had knowledge of ongoing, repeated instances of harassment" that were "directly related to the underlying sexual assault." Dkt. No. 40 ¶ 12 n.1; see also dkt. no. 49 at 12 ("[A]s Plaintiff clearly pleaded in both her Complaint and Amended Complaint, the thrust of Plaintiff's

14

allegations (and source of her harm) is Defendant [Wayne County School District's] failure to take appropriate actions <u>after</u> the day of the assault." (emphasis in original)). Accordingly, the Court construes Plaintiff's amended complaint as seeking to hold the School District liable for its actions after the assault, not for the assault itself. Under that reading of the amended complaint, Plaintiff has adequately pled the actual knowledge element at this stage.

### iv.  Element Four: Deliberate Indifference

The fourth element of a Title IX teacher-on-student claim is deliberate indifference. "Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" <u>Broward</u>, 604 F.3d at 1259 (quoting <u>Davis</u>, 526 U.S. at 648). Essentially, this amounts to "'an official decision by the recipient not to remedy the violation.'" <u>Id.</u> (quoting <u>Gebser</u>, 524 U.S. at 290). A "school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective in stopping a teacher from harassing the plaintiffs," but "where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior." <u>Id.</u> at 1261 (quotation and citations omitted).

15

Plaintiff contends that Defendant was deliberately indifferent to the harassment that occurred after the assault, particularly the statements from her JROTC teacher and the subsequent vehicle search by Vice Principal Short. Dkt. No. 49 at 10-11. In response, the School District argues that it was not deliberately indifferent because it did not have notice that the discrimination Plaintiff initially reported—the assault—"would result in 'the kind of harassment upon which [the] plaintiff's legal claim is based . . .,'" i.e., the vehicle search and the JROTC teacher's comments. Dkt. No. 46 at 11-12 (quoting Doe v. Bibb Cnty. Sch. Dist., 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015)).

Defendant puts significant weight on Bibb; in that case, the district court stated that the proper inquiry for the "actual knowledge" element is "whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the *kind of harassment upon which [the] plaintiff's legal claim is based*." Id. at 1307 (emphasis added) (quoting Roe ex rel. Callahan v. Gustine Unified Sch. Dist., 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009)). In other words, Plaintiff telling the School District that she was concerned about retaliation and harassment was insufficient because the specific type of harassment that Plaintiff alleges in her amended complaint—the vehicle search, fellow students'

16

comments, and JROTC teacher's comments—is not the same kind of harassment about which Plaintiff notified Defendant.

The School District's argument imposes a more stringent standard than that of the Court of Appeals. When Bibb was appealed, the Eleventh Circuit agreed that actual notice was insufficient under the facts presented *but* clarified that "'the substance of the actual notice'" must simply "'be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment.'" Doe v. Bibb Cnty. Sch. Dist., 688 F. App'x 791, 796 (11th Cir. 2017) (alterations adopted) (quoting Broward, 604 F.3d at 1254). In Broward, the Eleventh Circuit stated that "actual notice" was sufficient even in a circumstance "where the primary substance of that notice differed significantly from the circumstances of the plaintiff's harassment." Broward, 604 F.3d at 1257–58 (quoting Williams, 477 F.3d at 1288–90). The Broward court went on to reject the defendant's argument that it did not have actual notice because "the substance of [the plaintiff's] complaints" differed from prior incidents. Id. at 1259. Following the direction set forth in Broward, this Court concludes that the mere fact Plaintiff's notice of the prior harassment differed from the exact form of harassment she subsequently experienced does not undermine her contention that the School District had actual knowledge of harassment under Title IX.

17

Next, to determine if the School District acted with deliberate indifference, the Court looks to Plaintiff's allegations regarding the School District's remedial actions. According to the amended complaint, when Plaintiff returned to school, the measures established to protect Plaintiff from "retaliation and abuse" were not implemented. Dkt. No. 40 ¶¶ 33, 40, 42-43. When Plaintiff informed the school of this and reiterated her request for the protective measures, the School District still failed to provide them. Id. ¶¶ 34-36, 40-41, 43. Plaintiff further alleges that in January 2022, during a "full-scale lockdown with multiple agencies," her car was searched and damaged in "response to and in retaliation for Plaintiff reporting [the] sexual assault." Id. ¶¶ 51, 55. Plaintiff contends that this constitutes deliberate indifference because no contraband was found in her car and Vice Principal Short, who was the lead investigator on Plaintiff's sexual assault case and the school official who initially "would not speak" with Plaintiff following the assault, was one of the two individuals who performed the search. Id. ¶¶ 22-23, 53-55.

Additionally, Plaintiff alleges that while she was in class one day, her JROTC instructor, Ted Marcus, led a class discussion about rape and why women are raped more than men. Id. ¶ 59. Plaintiff contends that Marcus said "women get raped more often than men because they do not wear enough clothes," and that this

18

comment was directed towards her. Id. ¶¶ 60-61. When Plaintiff and her parents contacted Principal McDaniel about this incident, he did not respond. Id. ¶ 62. Even after Plaintiff's father was finally able to meet with Principal McDaniel to discuss this issue, Plaintiff contends that Principal McDaniel "did not do anything to address" it. Id. ¶¶ 62-65.

Taking the statements from the amended complaint as true, as required at the motion to dismiss stage, the Court holds that Plaintiff has plausibly alleged that the School District acted with deliberate indifference. The amended complaint contains sufficient facts suggesting that the School District was aware that "its remedial action" to protect Plaintiff from abuse or retaliation by other teachers was "inadequate and ineffective." Broward, 604 F.3d at 1261 (quotation and citations omitted). Indeed, Plaintiff alleges that the School District knew some remedial actions, like the supportive measures, were not implemented at all, thereby "render[ing] the [Defendant's] response clearly unreasonable in light of known circumstances." Id. Similarly, Plaintiff alleges that despite being aware of her additional reports of harassment, such as statements from other students or teachers, the School District's response was "clearly

unreasonable" because it failed to take any remedial action at all. Id.[6]

**B. Student-on-Student Claim**

In order to establish a student-on-student sexual harassment claim, a plaintiff must show seven things:

> (1) the defendant must be a recipient of federal education funding, (2) an appropriate person, meaning an official of the funding recipient who, at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf, must have had (3) actual knowledge of the sexual harassment and discrimination the plaintiff suffered, (4) the sexual harassment must have been sufficiently severe, pervasive, and objectively offensive by Title IX standards, (5) the funding recipient must have been deliberately indifferent to the sexual harassment and discrimination the plaintiff endured, (6) the funding recipient's actions must have caused the plaintiff to undergo sexual harassment or made the plaintiff more vulnerable to it or its effects, and (7) the funding recipient's deliberate indifference to the harassment and discrimination must have effectively barred the plaintiff's access to an educational opportunity or benefit.

---

[6] Defendant contests that the vehicle search amounts to discrimination under Title IX. Dkt. No. 46 at 15. During the discovery phase Defendant may identify evidence to support its argument and raise it in a motion for summary judgment. For now, the Court must accept the facts alleged in the amended complaint as true and draw all reasonable inferences in favor of Plaintiff. Ray, 836 F.3d at 1347.

_Stinson ex rel. K.R. v. Maye_, 824 F. App'x 849, 856–57 (11th Cir. 2020).[7] This standard is "far more rigorous than a claim for teacher-on-student harassment." _Hill_, 797 F.3d at 968.

### i. Elements One, Two, and Three: Federal Funding Recipient, Appropriate Person, and Actual Knowledge

Because the first three elements of a student-on-student claim are functionally the same as the teacher-on-student harassment, the Court finds that Plaintiff has sufficiently alleged the School District was a federal funding recipient and an appropriate person had actual knowledge of the incident giving rise to the harassment.

### ii. Element Four: Sufficiently Severe, Pervasive, and Objectively Offensive

Under Title IX, a plaintiff "must establish not only that the school district was deliberately indifferent to known acts of harassment, but also that the known harassment was so severe, pervasive, and objectively offensive that it denied its victims the equal access to education that Title IX is designed to

---

[7] In _Stinson_, the Eleventh Circuit noted that it has previously described Title IX student-on-student sexual harassment claims to have four elements and five elements. 824 F. App'x at 856 n.3 (citing _Hill v. Cundiff_, 797 F.3d 948, 970 n.11 (11th Cir. 2015); _Hawkins v. Sarasota Cnty. Sch. Bd._, 322 F.3d 1279, 1285 (11th Cir. 2003)). However, the court went on to say that its "discussions of the application of these elements, though, shows that however we may have counted them in the past, in fact, there are effectively seven elements of [a] Title IX claim for student-on-student sexual harassment." _Id._

protect." Hill, 797 F.3d at 968–69 (alterations adopted) (citation and quotation omitted). "The behavior must be serious enough to have the systemic effect" of denying Plaintiff's access to educational opportunities. Hawkins v. Sarasota Cnty. Sch. Bd., 322 F.3d 1279, 1288 (11th Cir. 2003). A single instance of harassment is not enough. Hill, 797 F.3d at 972.

"Whether gender-oriented conduct rises to the level of actionable 'harassment' thus depends on a constellation of surrounding circumstances, expectation, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." Williams, 477 F.3d at 1297 (quotation and citation omitted). Courts recognize that "children often exhibit behavior that would be wholly unacceptable between adults," and as such, "students often engage in insults, teasing, shoving, and gender-specific conduct that is upsetting to the student subjected to it." Hawkins, 322 F.3d at 1288.

"The most obvious example" of student-on-student harassment that is so severe, pervasive, and objectively offensive and thereby denies victims equal access to education is "overt, physical denial of access to school resources." Id. However, the Eleventh Circuit has recognized that physical exclusion "is not the sole means by which a plaintiff can demonstrate deprivation of an educational opportunity." Id. A plaintiff need only "establish that the behavior so undermines and detracts from the victim's educational

22

experience, that the student has effectively been denied access to
an institution's resources and opportunities." Id.

In Hawkins, the Eleventh Circuit determined that plaintiffs
could not show a "systematic effect of denying equal access to an
educational program or activity." Id. In that case, none of the
plaintiffs "suffered a decline in grades," nor did their teachers
report "any change in their demeanor or classroom participation."
Id. Alternatively, here, Plaintiff alleges that her "grades
declined, and she was mentally and emotionally distracted and
withdrawn from school." Dkt. No. 40 ¶ 57. Indeed, she went from
earning "almost exclusively" As and Bs to failing two classes. Id.
¶ 58. Moreover, unlike in Hawkins, the amended complaint reflects
that Plaintiff's classroom engagement changed, too. Plaintiff
alleges she dropped out of her JROTC program, "abandon[ing] her
lifelong dream of attending a military service academy." Id. The
Court is cognizant that "a mere decline in grades" is not enough
to survive a motion to dismiss. Davis, 526 U.S. at 652. However,
"the dropoff in [Plaintiff's] grades provides necessary evidence
of a potential link between her education and [students']
misconduct," and Plaintiff's "ability to state a cognizable claim
here depends equally on the alleged persistence and severity of
[students'] actions, not to mention the [School District's]
alleged knowledge and deliberate indifference." Id. Thus,
Plaintiff's sudden drop in grades and withdrawal from her JROTC

class serves as evidence, which the Court must accept as true, that the harassment from other students and the School District's inaction to address it effectively barred Plaintiff's access to educational opportunities and activities.

The School District points to <u>Doe v. Gwinnett County School District ("Doe/Gwinnett II")</u>, where the district court concluded on summary judgment that students taunting plaintiff after her sexual assault did not amount to harassment under Title IX and was not sufficiently severe, pervasive, or offensive to support a Title IX claim. No. 18-cv-05278, 2021 WL 4531082, at *11 (N.D. Ga. Sept. 1, 2021) (citing <u>Hawkins</u>, 322 F.3d at 1288). The same result is not reached here for two reasons. First, in <u>Doe/Gwinnett II</u>, the court "note[d] that Defendant took steps to address at least some of the alleged post-suspension harassment." <u>Id.</u> at *11. Here, Plaintiff alleges that the School District failed to take *any* action to address the harassment. Dkt. No. 40 ¶¶ 44, 47–48, 59–65. Second, in <u>Doe/Gwinnett II</u>, the court broadly interpreted <u>Hawkins</u> as establishing that taunting "is generally not so severe, pervasive, and objectively offensive to have a systemic effect of denying equal access to education." 2021 WL 4531082, at *13 (citing <u>Hawkins</u>, 322 F.3d at 1288). This Court does not read <u>Hawkins</u> so broadly. In <u>Hawkins</u>, the student-perpetrator was an eight-year-old boy who made extreme sexual comments to three eight-year-old female students. 322 F.3d at 1281. As explained <u>supra</u>, whether

24

behavior constitutes harassment can depend on factors such as the "ages of the harasser and the victim and the number of individuals involved." Williams, 477 F.3d at 1297; see also Davis, 526 U.S. at 651 ("[E]arly on, students are still learning how to interact appropriately with their peers."). Unlike in Hawkins where the sole perpetrator was quite young, here, the students allegedly harassing Plaintiff were high schoolers. Thus, the alleged perpetrators have a more developed understanding of what they are saying and the implications of such statements in comparison to an eight-year-old child. Dkt. No. 40 ¶¶ 2, 14 (stating that Plaintiff attended Wayne County High School and was an eleventh-grade student during the 2021-2022 academic year).

In sum, Plaintiff alleges that she endured more than "a single instance" of peer harassment which had a systemic effect on her educational opportunities. Davis, 526 U.S. at 652–53; Williams, 477 F.3d at 1297–98.

iii. **Elements Five through Seven: The School District's Deliberate Indifference Caused Plaintiff to be Further Harassed or Vulnerable to Harassment and Effectively Deprived Her of Educational Opportunities and Benefits.**

In Davis, the U.S. Supreme Court held that federal funding recipients can be "liable for their deliberate indifference to known acts of *peer* sexual harassment." 526 U.S. at 648 (emphasis added). To be sure, this does not require schools to completely eliminate peer harassment to avoid liability. Id. Instead, schools

25

"must merely respond to known peer harassment in a manner that is not clearly unreasonable." Id. at 648-69.

Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff has shown that the School District acted with deliberate indifference to known acts of peer harassment and that the School District's inaction caused Plaintiff to experience further sexual harassment. As a result, Plaintiff was effectively barred from educational opportunities and activities.

According to the amended complaint, the School District knew that Plaintiff requested to be checked on throughout the day and to be escorted to class because she feared harassment from her peers. Dkt. No. 40 ¶¶ 32-33. The School District did not implement these measures, and even after being informed that these protections were not in place, the School District took no corrective action. Id. ¶¶ 35-43. Accepting these facts as true, the Court can infer that the School District's inaction made Plaintiff vulnerable to further harassment.

Furthermore, Plaintiff alleges that she was being harassed by her classmates about the assault. Plaintiff states that her peers said "[i]t was Plaintiff's fault that the sexual assault occurred," "Plaintiff brought the sexual assault on herself," "Plaintiff was trying to use sex to get ahead in class," and "Plaintiff deserved what happened to her." Id. ¶ 45. Plaintiff contends that the School District was aware of this harassment because Plaintiff's mother

contacted Vice Principal Short to notify him about it, but the School District provided "no relief or intervention." Id. ¶¶ 44, 47-48. Of course, the School District was not expected to completely eliminate any peer harassment, but leaving Plaintiff's requests for help entirely "unanswered" was "clearly unreasonable" and shows deliberate indifference. Id. ¶ 48.

Moreover, Plaintiff alleges that the School District's deliberate indifference effectively barred her access to educational opportunities or benefits. The first day Plaintiff returned to school, she was not checked on or escorted to class. Id. ¶¶ 34-40. That day, she experienced a panic attack and left school. Id. ¶ 39. Later, Plaintiff contends the "constant harassment and bullying" from other students "was of such severity and frequency that Plaintiff was unable to focus on learning." Id. ¶ 47. Indeed, "as a result of the abuses and harassment she was suffering at school," Plaintiff resorted to logging into her classes from home. Id. ¶ 49. Furthermore, although previously Plaintiff had never failed a class and primarily made As and Bs, following the assault and subsequent harassment she failed two classes. Id. ¶¶ 57-58. Additionally, despite having a lifelong goal of attending West Point, Plaintiff dropped out of her JROTC program. Id. ¶ 58.

As discussed in section I.B.iv, a plaintiff must "establish that the behavior so undermines and detracts from the victim's

educational experience, that the student has effectively been denied access to an institution's resources and opportunities." Hawkins, 322 F.3d at 1288. This element is addressed thoroughly in the preceding section, but the Court emphasizes the critical points again here. In Hawkins, the court noted none of the plaintiffs experienced a decline in grades or changes in classroom participation and demeanor, so they had not shown that they were denied access to an educational program or activity. Id. at 1289. Conversely, in this case Plaintiff alleges that her grades *did* fall drastically and that "she was mentally and emotionally distracted and withdrawn from school" as a result of the harassment. Dkt. No. 40 ¶¶ 57–58. Moreover, like in Williams, where the discrimination allowed by or engaged in by the institution led to the plaintiff's withdrawal from college, here, the harassment allowed by or engaged in by the School District resulted in Plaintiff "los[ing] her drive to succeed in her lifelong goal of joining the military," choosing to forgo her dream of attending West Point, and withdrawing from JROTC. Id. ¶¶ 44, 49, 58.

At bottom, when viewing the facts alleged in the amended complaint in the light most favorable to Plaintiff, and applying relevant Eleventh Circuit case law, the Court concludes that Plaintiff has plausibly alleged that the School District's deliberate indifference effectively barred her from accessing educational opportunities and benefits. Thus, the School

28

District's motion to dismiss the Title IX harassment counts is **DENIED**.

## II.  Retaliation in Violation of Title IX

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). "Title IX retaliation claims are analyzed under the same framework that we use for Title VII retaliation claims." A.P. v. Fayette Cnty. Sch. Dist., No. 21-12562, 2023 WL 4174070, at *9 (11th Cir. June 26, 2023) (citations omitted). Thus, "[t]o prevail on a Title IX retaliation claim, the plaintiff must establish a prima facie case that: (1) she reported the discrimination; (2) she suffered an adverse action; and (3) there's a causal connection between the report and adverse action."[8] Id. If the plaintiff can set forth a prima facie case, then "the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse action." Id. (citation and quotations omitted). If the defendant sets forth a nonretaliatory reason for the action, then the burden shifts back to the plaintiff to show that defendant's

---

[8] "The Eleventh Circuit has never definitively set forth the elements of a Title IX retaliation claim." Doe v. Gwinnett Cnty. Pub. Schs. ("Doe/Gwinnett I"), No. 18-cv-5278, 2019 WL 12336248, at *9 (N.D. Ga. Aug. 22, 2019). However, in unpublished decisions, the court "has assumed that Title VII's retaliation framework applied." Id.

reasoning is "but a pretext for retaliation." Id. (citation and quotation omitted). "The inquiry into pretext turns on the decisionmaker's subjective beliefs and reasons for taking the adverse action." Id. (citation and quotation omitted). Therefore, a plaintiff's "retaliation claim will fail unless the plaintiff can show that the decisionmaker's true beliefs and reasons were retaliatory." Id. (quoting Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1148 (11th Cir. 2020) (en banc)). Importantly, Plaintiff need not be successful on her underlying harassment claim to be successful on a retaliation claim. Terry v. Young Harris Coll., 106 F. Supp. 3d 1280, 1297 (N.D. Ga. 2015) (explaining that Title VII anti-retaliation provisions protect employees regardless of the success of their underlying complaint and concluding that the same applies to Title IX because the provisions are "analogous"); Doe/Gwinnett I, 2019 WL 12336248, at *9.[9]

### A. Reporting

Plaintiff alleges that she reported the sexual assault by Defendant Hill. Dkt. No. 40 ¶¶ 22–31. Plaintiff alleges in her amended complaint that she tried to report the assault to Vice Principal Short "immediately after the incident." Dkt. No. 40 ¶ 22. When Plaintiff was not able to meet with Short, she left school

---

[9] Doe/Gwinnett I (motion to dismiss) and Doe/Gwinnett II (summary judgment) are part of the same case.

and called her father. Id. Later that day, Plaintiff returned to school with her dad where Plaintiff was interviewed by Vice Principal Edwards, Vice Principal Short, and a Jesup police officer. Id. ¶¶ 25–28. Furthermore, a few days after the assault, Plaintiff's parents met with Principal McDaniel to discuss supportive measures for Plaintiff in light of the incident. Id. ¶ 31. Thus, based on the facts alleged in the amended complaint accepted as true, the Court concludes that Plaintiff has adequately alleged that she reported the sexual assault and the reporting element is satisfied.

The School District argues that subsequent harassment does not amount to discrimination and cannot satisfy the reporting requirement. The Court need not address this argument because, as noted above, Plaintiff adequately alleges that she reported the assault. The subsequent conduct—the harassment by students, the statement by Plaintiff's JROTC teacher, and the car search—is relevant to the remaining elements.

**B. Adverse Action**

The next requirement of a prima facie case of retaliation is an adverse action. An adverse action is "materially adverse," meaning that it "would 'dissuade a reasonable person from making or supporting a charge of discrimination.'" Bowers v. Bd. of Regents of Univ. Sys. of Ga., 509 F. App'x 906, 911–12 (11th Cir. 2013) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S.

31

53, 68 (2006)). Furthermore, these actions must be "directed or done with the approval of officials who had authority to act for the School [District]." Saphir ex rel. Saphir v. Broward Cnty. Pub. Schs., 744 F. App'x 634, 640 (11th Cir. 2018); see also Davis, 526 U.S. at 641 ("The Government's enforcement power may only be exercised against the funding recipient," like the School District, not a third party.); Gebser, 524 U.S. at 287 ("Thus, whereas Title VII aims centrally to compensate victims of discrimination, Title IX focuses more on protecting individuals from discriminatory practices carried out by recipients of federal funds." (citation and quotations omitted)).

As noted above, Title IX claims mirror the framework used in Title VII claims. A.P., 2023 WL 4174070, at *9. Accordingly, Title VII principles are instructive here. One such principle is that when assessing whether an action is adverse, "actions are to be considered collectively." Wesolowski v. Napolitano, 2 F. Supp. 3d 1318, 1348 (S.D. Ga. 2014). In other words, "even if an action on its own would not constitute an adverse [] action, when combined with the 'total weight' of the actions, the plaintiff's burden may be met." Id. (quoting Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002)). Courts judge the "totality of the weight" from the perspective of "a reasonable person in the circumstances." Id. (quoting Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1233 (11th Cir. 2006)). Ultimately,

the collective harm must be more than trivial to amount to an adverse action. Id. at 1349.

Plaintiff alleges several actions "subjected her to a hostile education environment," namely Defendant's failure to implement the agreed upon safety measures, Vice Principal Short's search of her car, harassment by other students about the assault, and the JROTC teacher's statement about why women are raped more than men. Dkt. No. 40 ¶¶ 35, 42–45, 48–49, 51–55, 60–62, 118; see also Dkt. No. 49 at 21–22. The School District argues that Plaintiff cannot rely on these incidents to satisfy the adverse action element because the School District's inaction does not amount to an adverse action. Dkt. No. 54 at 9–10; see also, e.g., Williams-Evans v. Adv. Auto Parts, 843 F. App'x 144, 149 (11th Cir. 2021) ("[Plaintiff]'s claim is about what Advance failed to do—not about what it did do—and that means it was a claim of discrimination. She cannot recharacterize her claim as one of retaliation simply to get a second bite at the apple."). But see Doe v. Morgan State Univ., 544 F. Supp. 3d 563, 585 (D. Md. 2021) (concluding that "inaction may suffice to constitute an adverse action for the purposes of [the plaintiff]'s Title IX retaliation claim").

When accepting the facts alleged in the amended complaint as true and viewing the "total weight" of the actions, the Court concludes that Plaintiff has adequately pled the adverse action element of her claim. Wesolowski, 2 F. Supp. 3d at 1348; see also

Doe/Gwinnett I, 2019 WL 12336248, at *10 (concluding that plaintiff alleged adverse action "including being suspended twice and then allowing a hostile environment that effectively denied her educational opportunities and benefits of the school"). Plaintiff alleges that she faced a "hostile educational environment" because of the harassment from students and teachers and lack of protective measures. Dkt. No. 40 ¶ 118. This contention is supported by Plaintiff's allegations that her grades fell drastically to the point of failing two classes, she "lost her drive to succeed," she was reluctant to attend school and missed classes, and she quit JROTC, all of which together "negatively impacted her educational record, deprived her of educational opportunities and benefits, and subjected her to a hostile education environment." Id. ¶¶ 49, 57-58, 118. For now, the Court must draw reasonable inferences in Plaintiff's favor and accept the facts asserted in the amended complaint as true. When doing so, the Court concludes that the collective harm suffered by Plaintiff is more than trivial and can constitute an adverse action.

**C. Causal Connection**

To show causation, "'a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" Bowers, 509 F. App'x at 911 (quoting Shannon, 292 F.3d at 716). Causation can be inferred based on a "close temporal proximity

between the protected activity and the adverse action" but "temporal proximity without more, must be 'very close.'"[10] Id. (quoting Thomas v. Cooper Light., Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)).

Plaintiff alleges facts to support that "decision-makers were aware of the protected conduct." Bowers, 509 F. App'x at 911. As explained more thoroughly in section I.A.ii, I.B.ii, and II.A, Principal McDaniel, Vice Principal Edwards, and Vice Principal Short were aware that Plaintiff reported the assault. Dkt. No. 40 ¶¶ 25–28.

Additionally, Plaintiff adequately pleads that the adverse actions were "not wholly unrelated" to the protected activity. Bowers, 509 F. App'x at 911 (internal quotation marks and citation omitted). Indeed, the supportive measures for Plaintiff's return to school, which the School District did not actually implement, were established two days after Plaintiff reported the assault and were requested because she feared retaliation from students and teachers relating to the assault. Id. ¶¶ 32–33. Moreover, the harassment from other students, including other JROTC students,

---

[10] The School District argues that the allegedly retaliatory actions occurred too long after the protected conduct for Plaintiff "to plausibly allege a causal link." Dkt. No. 46 at 21. But Plaintiff makes clear that she "is not relying on a temporal connection alone to prove causation." Dkt. No. 49 at 22. Accordingly, the length of time between the protected action and the allegedly retaliatory conduct is less significant here.

consisted of statements related to Plaintiff's assault.[11] Id.
¶¶ 44-45. Similarly, the teacher who said that women are raped
more than men because "they do not wear enough clothes" was
instructing JROTC, the same class that Defendant Hill taught, and
Plaintiff alleges the "comments were directed at her." Id. ¶¶ 59-
61. Lastly, Plaintiff has plausibly alleged that Vice Principal
Short, accompanied by Detective Hamilton, searched Plaintiff's car
"in retaliation for Plaintiff reporting sexual assault." Id. ¶ 55.
The Court can reasonably infer that the car search was done in
retaliation for Plaintiff's report; no contraband was found, Vice
Principal Short, the lead investigator on Plaintiff's sexual
assault case, refused to allow another school official to take his
place in the search, and Plaintiff's father was threatened with
arrest if he continued to complain that Mr. Short was conducting
the search. Dkt. No. 40 ¶¶ 51-55. In sum, Plaintiff has pled
sufficient facts to show that her Title IX retaliation claim is at
least plausible on its face. Thus, the motion to dismiss the Title
IX retaliation claim is **DENIED**.

---

[11] True, the protected activity here is that Plaintiff reported the
assault, not that she was assaulted. However, had Plaintiff not
engaged in the protected action of reporting the incident, which
resulted in Defendant Hill leaving the school, dkt. no. 40 ¶ 7,
others would not necessarily know of the assault to then engage in
the conduct alleged by Plaintiff.

**III. Violation of 42 U.S.C. § 1983 (Count III)**

The School District next moves to dismiss Plaintiff's § 1983 claim. "Although Title IX and § 1983 sexual harassment claims are similar, [the] resolution of [a plaintiff]'s Title IX suit does not dictate the result of [a] § 1983 analysis." Hill, 797 F. App'x at 976. Therefore, despite the Court's holding above that Plaintiff has plausibly alleged claims under Title IX, the Court must address Plaintiff's § 1983 independently.

Section 1983 provides:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Municipalities and other local government entities, like school districts, are considered "persons" under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Davis v. Dekalb Cnty. Sch. Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) (identifying school districts as a municipality for § 1983 purposes). The Supreme Court, however, "has placed strict limitations on municipal liability under § 1983." Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words,

a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Monell</u>, 436 U.S. at 691. This is because "the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." <u>Id.</u> Put differently, a local government "will be liable under section 1983 only for acts for which the local government is actually responsible." <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (citing <u>Turquitt v. Jefferson Cnty.</u>, 137 F.3d 1285, 1287 (11th Cir. 1998)).

Municipal liability attaches only where the local government's custom or policy caused its employee to violate the plaintiff's constitutional rights. <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998) (citations omitted). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom[12] or policy[13] that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283,

---

[12] "A custom is a practice that is so settled and permanent that it takes on the force of law." <u>Cooper v. Dillon,</u> 403 F.3d 1208, 1221 (11th Cir. 2005).

[13] "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Id.</u>

1289 (11th Cir. 2004) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)); <u>see also</u> <u>Scott v. Miami Dade Cnty.</u>, No. 21-13869, 2023 WL 4196925, at *8 (11th Cir. June 27, 2023) (per curiam) (applying the three <u>McDowell</u> requirements to a § 1983 supervisory liability claim against a county), <u>cert denied</u>, 144 S. Ct. 837 (2024). Typically, a municipality does not have an "officially-adopted policy of permitting a particular constitutional violation." <u>Grech</u>, 335 F.3d at 1330 (citation omitted). Thus, most plaintiffs must establish that the municipality "has a custom or practice of permitting [a constitutional violation] and that the [municipality's] custom or practice is 'the "moving force [behind] the constitutional violation."'" <u>Id.</u> (quoting <u>City of Canton</u>, 489 U.S. at 389).

## A. Constitutional Right

The Equal Protections Clause "confers a federal constitutional right to be free from sex discrimination." <u>Hill</u>, 797 F. App'x at 976 (citing U.S. Const. amend. XIV, § 1). Plaintiff alleges that her equal protection rights were violated "when she suffered sexual harassment and discrimination at Wayne County High School." Dkt. No. 40 ¶ 123. As discussed thoroughly above, Plaintiff's amended complaint is replete with facts to support her claim that the School District failed to implement support measures after she reported the assault, was aware of and did not stop further harassment from other students and teachers, and

39

purportedly retaliated against her during a vehicle search. <u>Id.</u> ¶¶ 22-33, 35, 40-45, 47-48, 51-55, 59-62, 64-65. In light of these facts, the Court concludes Plaintiff has adequately pled that she suffered a constitutional violation of her equal protection rights.

**B. Custom or Policy**

Plaintiff sufficiently alleges that the School District had a custom or policy of inadequate training for Title IX, sexual harassment, and sexual assault claims. "To succeed on a failure-to-train claim absent a pattern of violations, a plaintiff must show that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need.'" <u>Doe/Gwinnett I</u>, 2019 WL 12336248, at *11 (quoting <u>Canton</u>, 489 U.S. at 390).

In her amended complaint, Plaintiff alleges that the School District failed to train its administrators, staff, students, and parents "despite the plainly obvious need for training" on "sexual misconduct and identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment" and "the prohibition, illegality, and impropriety of retaliating against students like Ms. Doe who report violations of Title IX and teacher-against-student sexual misconduct." Dkt. No. 40 ¶¶ 133-

34. Furthermore, Plaintiff contends that the School District made a "conscious or deliberate decision" not to train its employees on deploying supportive measures for students who report sexual harassment/abuse that "restore or preserve equal access" to educational programs. Id. ¶¶ 134–35.

To support these allegations, Plaintiff points to the School District's failure to implement the agreed-upon supportive measures when she returned to school, a failure that continued even after Plaintiff's mother informed the school of such. Id. ¶¶ 32–43. Furthermore, Plaintiff alleges that she was targeted with "hateful, victim-blaming commentary" by other students and that the "constant harassment" was met with "no relief or intervention by the school," despite Plaintiff and her parents reporting the abuse. Id. ¶¶ 44–48. Similarly, Plaintiff contends that the School District also "did not do anything" when Plaintiff and her parents informed Principal McDaniel that Plaintiff's teacher made comments "directed towards [Plaintiff]" about why women are raped more than men. Id. ¶¶ 60–65. Additionally, Plaintiff alleges that "in response to and in retaliation for" reporting the assault, the School District subjected Plaintiff to a search of her vehicle and Vice Principal Short refused to allow another school official to replace him in carrying out the search. Id. ¶¶ 51–55. Perhaps one of the strongest facts included in the amended complaint is that Vice Principal Short, the lead

investigator on Plaintiff's sexual assault case, "admitted to Plaintiff and her parents on the day of the assault that he did not have the training to know what to do to help Plaintiff." Id. ¶ 136. Accepting these facts as true, the Court determines that Plaintiff has sufficiently pled that the School District had a custom or policy of failing to train administrators, teachers, parents, and students on teacher-on-student sexual harassment, student-on-student sexual harassment, Title IX violations, and reports of sexual assault.

The School District contends that Plaintiff has not shown a "pattern of prior incidents," dkt. no. 46 at 25–26, to establish liability for a failure to train claim because she points to facts pertaining only "to her own complaint of sexual harassment," dkt. no. 54 at 12. The School District directs the Court to decisions from other district courts in the Eleventh Circuit where "the handling of a single claimant's incident of harassment" was not sufficient to support a § 1983 failure to train claim.[14] Dkt. No. 54 at 12. However, most of the cases cited by the School District occurred at the summary judgment stage. See Doe/Gwinnet II, 2021 WL 4531082 (having previously denied defendant's motion to dismiss the failure to train claim, the court determined that based on the

---

[14] See Canton, 489 U.S. at 390 n.10 (providing, in dictum, an example of conduct that might support single incident § 1983 failure to train liability—a city's failure to train police officers on the constitutional limits of deadly force).

evidence presented at the summary judgment phase and "given the extremely narrow scope of a single-incident failure-to-train claim," plaintiff could not meet her burden "to create a genuine issue of material fact that Defendant's failure to train as to Title IX issues was so obvious and would so obviously lead to the violation of one's constitutional rights"); Davis v. Fulton Cnty., No. 1:08-CV-3241, 2010 WL 11500519, *18 n.20 (N.D. Ga. Mar. 2, 2010), report and recommendation adopted, No. 8-CV-3241, 2010 WL 11508699 (N.D. Ga. Mar. 25, 2010) (declining to impose § 1983 liability on a single incident of sexual harassment at the summary judgment phase).

## C. Causation

Lastly, Plaintiff must show "that the deficiency in training actually caused" her harm. Canton, 489 U.S. at 391. "This requires a plaintiff to demonstrate a connection between the failure to train and the risk, as well as the risk and the plaintiff's harm." Doe/Gwinnett I, 2019 WL 12336248, at *12 (citing Daniel v. Hancock Cnty. Sch. Dist., 626 F. App'x 825, 835 (11th Cir. 2015)). When viewing the amended complaint in the light most favorable to Plaintiff, the Court holds that the causation element is sufficiently pled.

In her amended complaint, Plaintiff states that the School District failed to train administrators, staff, students, and parents about policies regarding sex discrimination, sexual

43

harassment, Title IX, and "identifying, investigating, reporting, stopping, and remediating the effects of sexual harassment." Dkt. No. 40 ¶¶ 131-32. This assertion, combined with allegations that the School District failed to employ supportive measures for Plaintiff, a school official stated he "did not have the training to know what to do to help Plaintiff," and harassment from students and teachers went unaddressed by the school, supports the inference that the School District's failure to train created a risk of sexual harassment and sexual discrimination within Wayne County High School. Id. ¶¶ 31-37, 40-43, 44-48, 59-65, 136. As a result of that risk, Plaintiff alleges that her right to be free from sexual discrimination under the Equal Protections Clause was violated and that she "suffered mental anguish and a denial of educational benefits in connection with the deprivation of her federal statutory rights guaranteed" by the Constitution, Title IX, and § 1983. Id. ¶ 143. Accordingly, Plaintiff has plausibly alleged that the School District's failure to train caused her to be sexually discriminated against following her assault. Thus, the School District's motion to dismiss Plaintiff's § 1983 failure-to-train claim is **DENIED.**

## CONCLUSION

Plaintiff's allegations set forth a plausible Title IX claim for teacher-on-student harassment and student-on-student harassment. Further, Plaintiff adequately alleges a Title IX

retaliation claim and a failure-to-train claim pursuant to § 1983.
For these reasons, Defendant Wayne County School District's motion
to dismiss, dkt. no. 46, is **DENIED.**

      **SO ORDERED** this 2nd day of May, 2025.

                                _____
                                HON. LISA GODBEY WOOD, JUDGE
                                UNITED STATES DISTRICT COURT
                                SOUTHERN DISTRICT OF GEORGIA